**UNITED STATES of America, Appellant,**

v.

**HINDS COUNTY SCHOOL BOARD et al., Appellees.**

**No. 25529.**

United States Court of Appeals
Fifth Circuit.
Aug. 14, 1968.

Robert E. Hauberg, U. S. Atty., Jackson, Miss., Dorothy Battle Rankin, Atty., Dept. of Justice, Washington, D. C., Stephen J. Pollack, Asst. Atty. Gen., Frank M. Dunbaugh, Robert T. Moore, Attys., Dept. of Justice, Washington, D. C., for appellant.

William A. Allain, Asst. Atty. Gen., Jackson, Miss., Robert C. Cannada, John M. Putnam, Jackson, Miss., for appellees; Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., Joe T. Patterson, Atty. Gen., Jackson, Miss., of counsel.

Before WISDOM and COLEMAN, Circuit Judges, and MITCHELL, District Judge.

WISDOM, Circuit Judge.

In this case involving approval of a freedom of choice plan of school desegregation the Court allows a minor departure from the model decree fabricated by the Court en banc in United States v. Jefferson County Board of Education, 5 Cir. 1967, 380 F.2d 385; aff'g 5 Cir. 1966, 372 F.2d 836, cert. denied, 1967, Board of Education of City of Bessemer v. United States, 389 U.S. 840, 88 S.Ct. 77, 19 L.Ed.2d 104. We do so for the limited purpose of facilitating the Hinds County School Board in complying with its duty to report progress in school desegregation within its district. We disapprove two other departures from the *Jefferson* decree. We adhere to the principle that so-called "freedom of choice" plans should follow the Jefferson decree in all matters of substance and policy.

\* \* \* \* \* \*

The Hinds County School District is a rural school district in Mississippi.[1] There are 6,400 white and 7,500 Negro students in the district. There are twenty-two public schools, twelve of which are predominantly white and ten of which are all-Negro schools. Before January 1967 the schools were segregated. In the 1967–68 school year 176 Negro students, two percent of the total Negro student population were enrolled in formerly all-white schools.

In January 1967, the Attorney General filed a complaint under the Civil Rights Act of 1964, 42 U.S.C. 2000c–6(a) and (b). After a hearing, the district court ordered the County Board of Education to submit a desegregation plan. In February 1967, the Board adopted a plan. In March 1967, this Court handed down its decision, sitting en banc, in *Jefferson*. In August 1967, the United States sought entry of a decree identical with the *Jefferson* decree. The attorneys for both sides stipulated to the entry of the

1. Although the City of Jackson is located in Hinds County, the schools of that city are operated and maintained by the Jackson Municipal Separate School District.

*Jefferson* decree except for the following three paragraphs:

"II(g) *Extra Copies of the Explanatory Letter and Choice Form.* Extra copies of the explanatory letter and choice form shall be freely available to parents, students, prospective students, and the general public at each school in the system and at the office of the Superintendent of Education during the times of the year when such schools are usually open."

"II(j) *Choices Not on Official Form.* The exercise of choice may also be made by the submission in like manner of any other writing which contains information sufficient to identify the student and indicates that he has made a choice of school."

"IX(1) *Report on Choice Period.* The defendants shall serve upon the opposing parties and file with the Clerk of the Court on or before April 15, 1967, and on or before June 15, 1967, and in each subsequent year on or before June 1, a report tabulating by race the number of choice applications and transfer applications received for enrollment in each grade in each school in the system, and the number of choices and transfers granted and the number of denials in each grade of each school. The report shall also state any reasons relied upon in denying choice and shall tabulate, by school and by race of student, the number of choices and transfers denied for each such reason."

September 8, 1967, the Court entered its order in the case. In this order, paragraph II(j), providing for choices on other than official forms, is deleted altogether. Paragraph II(g) is modified to provide that an additional form given to a student or his parents and used for the making of a choice may be filled out by school officials to show the name and address of the student and his parents and may be marked "duplicate". It is also provided that a third person may receive a form on which an official choice may be made only if he has the written authorization of a student's parents and that if he does not have such written authorization he may obtain only a form with the word "specimen" written on it, which may not be used to make an official choice.[2] Paragraph IX(1) is also modified so as to provide that the statistics contained in the reports filed with the district court on the results of the choice period need not be by race.[3]

2. As modified, the paragraph now reads: "II(g) *Extra Copies of the Explanatory Letter and Choice Form.* Extra copies of the explanatory letter and choice form shall be freely available to parents, students, prospective students, and the general public at each school in the system and at the office of the Superintendent of Education during the times of the year when such schools are usually open. The choice forms that are actually intended to be returned, however, may be filled out so as to show thereon the name of the student or prospective student and the name and address of the parents of such student or prospective student or the adult person serving as the student's or prospective student's parent, and that such form is a duplicate, if a choice form has previously been delivered to such student or prospective student or to the parent or such other adult person of such student or prospective student.

In the event the choice form is given to a party other than the student or prospective student or to the parent or other adult person serving as a parent of the student or prospective student, then such form may be marked 'specimen' or with some other legend so as to show that it is not to be used for the actual making of the choice; provided, however, the provision of this unnumbered paragraph shall not apply as to choice forms given to any person who has been authorized in writing by the parent or the person serving as the parent of a student or prospective student to receive the choice form for such student or prospective student."

3. As modified, the paragraph now reads: "IX (1) *Report on Choice Period.* The defendants shall serve upon the opposing parties and file with the Clerk of the Court on or before October 15, 1967, and in each subsequent year, on or before June 1, a report tabulating the number of choice applications and transfer applications received for enrollment in each

## I.

In this circuit almost all of the school desegregation plans thus far submitted to the courts for approval have been variants of the freedom-of-choice plan—at best an awkward, transitionary step toward integration. In *Jefferson* this Court made it clear that the model decree attached to the opinion sets the minimum standards for free-choice plans and that these standards should apply uniformly throughout the circuit absent a showing of "exceptional circumstances". We stated:

> The provisions of the decree are intended, as far as possible, to apply uniformly throughout this circuit in cases involving plans based on free choice of schools. School boards, private plaintiffs, and the United States may, of course, come into court to prove that exceptional circumstances compel modification of the decree. 372 F.2d at 894.

In Stell v. Savannah-Chatham Board of Education, 5 Cir. 1967, 387 F.2d 486, Judge Tuttle, for the Court, pointed out that the *Jefferson* opinion had been "carefully arrived at after this court had struggled for a decade to solve problems of school desegregation on a case-to-case basis, without enough having been accomplished to satisfy the requirements of the Supreme Court's decision in Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, and *without sufficient uniformity from school district to school district*". (Emphasis added). In *Stell* the Court permitted only such modifications of the precise language of the

*Jefferson* decree as were not objected to by the individual appellants and the United States. The Court refused to approve changes in the decree which dealt with matters of "substance and policy". In Gaines v. Dougherty County Board of Education, 5 Cir. 1968, 392 F.2d 669, this Court again through Judge Tuttle stated:

> "No panel of this court, however, has the authority to permit deviation from those provisions of the Jefferson decree which deal with matters of substance and policy.

■ Here the district court modified *Jefferson* in three respects: (1) choices are required to be made on official forms; (2) duplicate official forms may be given out only to students or their parents and to third persons bearing written authorization, and may be partially filled out by school officials; and (3) the report on the result of the free choice period may not be broken down by race. We consider that all of these changes are substantial.[4] The record fails to establish that "exceptional circumstances" exist justifying the first two changes and we consider it highly unlikely that a hearing would develop facts to support modifications of paragraphs II(g) and IX(l).

## II.

The preparation of statistical reports by the Board poses a problem. The Board contends that it cannot comply with Paragraph IX(i), requiring reports showing the race of the students because the district does not maintain any records based on race. They point out that when the choice forms are submit-

---

grade in each school of the system, and the number of choices and transfers granted and the number of denials in each grade of each school. The report shall also state any reasons relied upon in denying choice and shall tabulate, by school, the number of choices and transfers denied for each such reason."

4. The first two changes might well produce some slight easing of the work of the school administration, but this does not justify the inhibition on the exercise of

free choice which results from them. So long as the school board is accurately advised, in writing, of the actual choice of the student and his parent or guardian, it should not matter on what form this information appears, or whether the form is filled out and submitted by a third person on behalf of the student. *Jefferson* holds that the duty to eliminate the dual system rests with the school board. There is no warrant for transferring part of this burden to the students.

ted during the March choice period, there is no indication on the form showing the race of the student. The report must be filed by June 1, which is before the new school year begins; and therefore the school officials are not in a position to observe the race of the prospective students. The Hinds County School Board earnestly insists that it wishes to comply with the reporting provision and seeks a practicable solution to the dilemma. No other case has reached this Court in which school officials have averred an inability to prepare reports broken down by race.

The district court's solution of the problem was to require that in the report submitted *after* the school year begins the Board will furnish the information showing the race of the student. The students will then be in school and school officials can make a determination of the racial composition of each grade based upon observation. The district court required the report due before June 1 show the action taken with respect to all the choice forms submitted but did away with the necessity of requiring that report to show the race of each student.

In Green v. County School Board of New Kent County, Virginia, 1968, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 the Supreme Court commented that "the general experience under 'freedom of choice' to date has been such as to indicate its ineffectiveness as a tool of desegregation", although there may well be instances in which it can serve as an effective device. In *Jefferson* we characterized it as "haphazard" and noted that it is "but one of the tools available to school officials at *this stage* of the process of converting the dual system * * * into a unitary system". 385 F.2d 390 (Original emphasis). There is no way to telling if a freedom-of-choice plan is effective unless a district's progress toward desegregation is reflected in statistics. There is absolutely no way to determine in June how many students in March selected schools in which their race is in a minority, unless

the June 1 report shows the race of the students.

■ As to the required reports we disapprove of the district court's departure from the Jefferson, except in one minor respect. We recognize that school officials may not know until September the race of students new to the school system. These are children entering the first grade (or kindergarten, if there is kindergarten) or students transferring to the Hinds County School District from another school district. As to such prospective students only, the Board may add to the choice form the requirement that the applicant indicate his race. In parenthesis after the blank or space showing race should be added language reading substantially as follows:

This requirement is for the purpose of reporting progress toward desegregation.

The case is remanded to the district court for action consistent with this order and opinion.